Last case is a consolidation of four cases, and we'll hear 20 minutes from each side, L.L.C. v. Google, Inc. We're done with advertising, so we're moving on to a different system. This system involves storage of files for users on a server. And this case, as it's consolidated with four cases, presents the Kikinis reference, which is raised in each of the cases, and the Foley reference, which is only raised in one. But I'm going to start with Foley, because I think we can dispatch with it quickly. The board did not apply its own construction of the user library element in the Foley decision. The board construed user library as a collection of an individual's stored files. That's not challenged. We did not dispute that construction. That is the construction of user library. And the board applied a different construction when it looked at the project files disclosed as being remotely stored in the Foley system. And what the board said is it focused on the fact that those project files are, quote-unquote, individual stored files, not an individual's stored files. And while there aren't a lot of different letters there to make up the difference between individual stored files and N individual stored files, they mean very different things. With respect to the Foley decision, which is in the Google case, at A26, the board said in Figure 5 of Foley, the portfolio file is a file that provides references or links to individual project files. And then it followed up by saying the collection of project files, on the other hand, is the plurality of individual project files that can be linked from the portfolio file. So it's clear that the board is not applying the construction that it adopted when it's examining the Foley reference. It's merely focusing on the plurality of individual project files. And we think, simply, that this case must be remanded to the board for consideration of the proper construction. So it's not a case where we're disputing the construction, and if this panel agrees with us, then it has to go back for application of the proper construction to the prior art. Simply, the board did not apply its own construction. And though it doesn't involve a great deal of different letters and numbers, well, I guess there are no numbers, but different letters and punctuation, individual stored files and individuals stored files are different things. You gave a cite earlier to page A26, and which appeal was that? This is the Google appeal. This is the decision in the Google appeal. And that is the only appeal that presents the Foley prior art reference. And the parties have disputed in the briefs what it means and whether Foley discloses an individual's stored files. That, I submit, is briefing for another day because we don't have the rationale of the board for its conclusion that those project files are an individual's stored files. We don't think they will be. Google submits that they are. But until the board actually applies that claim construction to the prior art, we don't know why the board decided as it does. Turning to Kikinis, there are two primary arguments that we raise with respect to the Kikinis reference. The first relates to a claim construction in Claim 2 of the 290 patent that focuses on the language to access the file associated with the selected user link from the user library. And the 290 in Claim 2 describes a system where a user is provided with a user profile that is stored on a server and a user library that is also stored on the server. And that this program of Claim 2 is operable to receive the profile from the server, display user links, and allow the user to access files stored in the user library from those user links. In fact, we've argued that that claim requires a one-to-one correlation between the user link and the user's file. And we focus on the language of the claim itself. And we think there's a plain meaning to that language, which is to access the file associated with the selected user link from the user library. Now, the appellees, the petitioners below, and the board disagreed with BE. They said it's not that narrow. It's broader. And they focused on language and the specification that describes what we submit is merely the organization of the user profile, but doesn't address whether the link and the file have this one-to-one relationship. But we think that there's plenty of evidence in the claim itself to support our narrower reading, starting with the preamble. The preamble states that the user profile contains at least one user link that provides a link to one of the files. And we think that's consistent with the limitation further down in Claim 2, which is to access the file associated with the selected user link from the user library. Now, what's odd about this is the board said it's broader than that BE. You're wrong. But then the board applied our narrower construction to the Kikinis reference. And it found that the reference anticipates the 290, but the evidence on which it relies is hardly sufficient to support that conclusion. What the board relied on was a single statement in Kikinis that suggests the relationship that we advocate is required by Claim 2. The board cited Column 7, Line 34 through Column 8, Line 1 of Kikinis, and it says there, Homepage 73, however, is different than conventional homepages, as described above with reference to Figure 2, having on-screen links to electronic documents reserved for the homepage owner, such as email and faxes. And what the board concluded was that one line from Kikinis disclosed that relationship between links and files that we said was mandatory in the construction of Claim 2. But that one line is inconsistent with literally every other disclosure of the system of Kikinis. In fact, the very next sentence in Column 8, Line 2 through 4, says, as an example, Homepage 73 in Figure 3 has a button 117 labeled VMAIL for voicemail. By selecting button 117, a user is linked to Database 93, Figure 2, through CGI80 and Voicemail Program 87. And there are other references. Column 6, Line 35 through Column 7, Line 1, a single database of Set 71 includes a Homepage 73 individualized to a specific client that provides software links to various lower-order databases maintained by Electronic Document Server 69. Kikinis discloses a system that presents a homepage to a user that contains links to databases from which the user may then access different electronic documents. It describes a voicemail database, an email database, and other electronic document database. And by clicking the links on the homepage, the user gets merely the database. It does not get a given file within the database. And we said, that's not good enough, that's not what the 290 is because the 290 has in the profile a link to a specific file in the user library. Indeed, Claim 1 of Kikinis states an on-screen active selection area for access to an electronic document database containing electronic documents. Addressed specifically to the homepage owner. So we submit that though the board said our construction was wrong and it applied our construction and it said it was anticipated by this one line that's inconsistent with the entire reference, we submit that's not substantial evidence. I guess in Kikinis, is it your understanding that ultimately there's a link to any given file? It's just that you have to go perhaps through a chain of links to get to that link? You do, that's correct. And then I guess my next question would then be, well, is the user profile in Kikinis just that front page? Or is it really an amalgamation of everything that's contained inside that user profile which would include ultimately some window that would have the final link to the said file? So that's a great question and I'd like to answer it by focusing on what the institution decision said because that ultimately set up what our target was. And the institution decision said the homepage of Kikinis was the user profile. The on-screen active selection area of the homepage was the user link. The database was the user library and that the electronic documents within the database were the files. And of course our contention is there must be a link to one file from the user profile. From the homepage of the user profile. The homepage of Kikinis, correct. And along the way when we made this argument the board came back in the final decision and shifted gears on us. It said, okay, not only are you anticipated because of that one liner but file is broadly defined in the 290 patent and the databases which we've identified as the user library, those can also be the files. And using its definition of user library which I mentioned earlier with respect to Foley, a collection of an individual stored files, the board held, well, you've got multiple databases because there's a voicemail database and an email database and another electronic documents database. That collection is the user library. So that's an argument that wasn't presented in the petition. It wasn't presented in the institution decision. It is not something that we aimed at when we filed our patent owner response. There was no testimony related to that. That was a new finding. I believe it was presented in reply and the board adopted it. Did you seek re-hearing on that issue? We did not. We looked at it as a new argument that shouldn't have been part of the process. It was, as this court has held, raised in reply. It was addressed in the final decision, not the institution decision. We think it was in part an admission that that one liner that the board cited as evidence of anticipation was insufficient since the board decided to change its analysis and the claim mapping so that there would be a file with respect to the databases as opposed to the documents in the database. We think this overhauling of the mapping of the claim elements to Kikinis reflects that there was a valid argument that we presented in the patent owner response that as to this limitation, Kikinis doesn't satisfy it. If you thought that you weren't on notice and that the board had a new ground, why did you not seek re-hearing? Well, we didn't understand our obligation to seek re-hearing and we had a right to appeal. And in light of some of the statistics that are out there with respect to the success rates on re-hearing, we took our chance at coming to this court instead. We don't understand the decision not to seek re-hearing as somehow waiving any of our rights with respect to a new argument presented in a reply or an outcome in the final decision that was not present in the institution decision. I didn't understand your blue brief, however, to be raising some kind of procedural due process point. You were obviously making an argument that what you considered to be a new finding could be also incorrect to the institution finding, but I didn't read your appeal as including a separate procedural argument to vacate the board's decision based on some impermissible new finding that you didn't have an opportunity to respond to. Well, we've been accused of waiving this argument with respect to the files not being an individual stored file. And the fact of the matter is that was not something that we had an opportunity to respond to. So we do have a procedural objection. It's couched in terms of the appellee's procedural objection. I believe it's Microsoft that makes that procedural objection stating that we've waived. But we have an issue with the board adopting a new claim mapping in the final decision that wasn't part of the trial, that wasn't in the institution decision. But as I understand the content of your appeal, it's based on a merits-based challenge to that new finding. It's not based on some procedural challenge that the board finding must be vacated solely because it was brand new. No, we did not make a procedural challenge in that way. And the board maintained its prior view as well, but just had this alternative argument in addition to the prior position. It did. Okay. I see I'm into my rebuttal time, so I will sit down. We will save it for you. Thank you. Mr. Cushion, you are taking 10 minutes. May it please the court, I'm Jeff Cushion representing Microsoft in this appeal. I'm going to be offering remarks on the Kikinis grounds that are spread across several of the appeals. And Mr. Rosenthal will be addressing the issue relating to Foley, which is raised in the Google IPR appeal. First thing I'd like to do is make sure that we do see exactly what the board had in front of it, and there was substantial evidence the support is finding in two different ways that Kikinis anticipates the claims. First thing that, and it's already been cited, so I'll just refer to that. The Kikinis reference describes a system which presents an interface, a graphical user interface, which has links. And when the user clicks on those links, they get access to the files that are stored on a server. And Kikinis is very explicit in saying what happens. It says, this is at A425, 426, column 7, lines 34 to column 8, line 1. Home page 73 having screen links to electronic documents reserved for the home page owner, such as email and faxes. And this was the first ground the board found satisfied the requirements of the claim. That's a technique shown in Kikinis where the links take you directly to the user's files. The next thing that the board did was look to the record of evidence, and this is, I would like to raise a couple of the issues that were presented by the petitioner below. That go to this question of whether there's a requirement for one click or some kind of special way of connecting to the files. That is refuted by the evidence in their own patent. There are examples in their patent, and I'll direct you to column, or to, I'm sorry, to figures 5B and 5C, which were found at A84. And what that is illustrating, what the board addressed in their written decision, was a technique where a first window is provided that a user has to click on that first window to get another list of links, and that eventually gets them to the link to the file. It's important to recognize that the board considered this question of whether there was a requirement for one-to-one access, or one-click access, or direct access, and they found, based on their own patent, that wasn't a supportable, restricted meaning of the claims. I'd also like to flag a couple things in the definitions of their patent, and this is, again, something the board relied on. If you go to A9, you see of the record, this is the board identifying a number of terms that were construed or defined explicitly in the patent, one of which is link, and a link is a data item that identifies a location or address of a program or information resource. File is similarly described and defined in very broad terms. And all of that led the board to conclude that it was not appropriate to read into this link requirement some special kind of way of connecting to the files. But ultimately, the first ground that the board found was based on this explicit indication in Kikinis that links are provided to individual documents. Now, the next issue that the board found satisfied Kikinis, or satisfied the claims from Kikinis, was something which developed through the evidence in the proceeding. And what was shown through that evidence was that in the Kikinis system, there's a collection of individual databases maintained on the server. The links that are on that web page that is the user interface take you to those individual files. And what was before the report was evidence from the testimony of their own witness saying those database files that are collections of documents satisfy the definition of file in their own patent. And that evidence wasn't disputed. There was enough presented to the board for them to find an independent ground for demonstrating the anticipation by Kikinis. Correct, that wasn't part of the institution decision, right? That was not in our petition. It was not addressed in the institution decision. But during the course of development and the proceeding, it was addressed. And I would like to flag particularly that this was an issue that was raised and addressed in our reply, and also addressed and argued by them at the oral hearing. And in your recent decision in Genzyme, this is the Genzyme case from June 14th of this year, you addressed this question of whether it's appropriate for the board to kind of consider something which isn't articulated in the original, in the institution decision, and you found that it was appropriate because this is obviously a proceeding they conduct. Additional evidence comes into play. And that's something which focuses on whether they had an opportunity during the proceeding to address the new issues that are reduced through that proceeding. And they did. They addressed it. And I'll give you the site, the oral hearing transcript. You can see it, A3399 to 34M2. You see this being addressed by them at the oral hearing. Now, I think it's fairly clear when you take either of these two mappings that were presented and found by the board to demonstrate anticipation, you could affirm on either of those grounds. If you didn't address the second ground, you could still affirm on the first one. And I think here it's important to appreciate what that evidence was in front of the board. I'm sorry. The oral hearing transcript is not in the joint appendix. Is that right? There are excerpts, I believe, from the, I think we had site A3399. Oh. Okay. I see it. Okay. Thanks. All right. This one passage in Kikinis that describes the first example of anticipation was the subject of the deposition of their witness. And I'd like you to direct your attention to A1276 at 66-6-20. Now, counsel for the appellant has portrayed this as kind of a throwaway statement in Kikinis, and I don't believe that's accurate. What Kikinis is describing is literally the same kind of technique shown in claims in their patent, and we took that up with their witness. He agreed not only that's literally what it says, but, as he said, that's what is being disclosed by the reference. And we believe, again, this is a proceeding where the evidence was presented to the board. The board found substantial evidence to confirm that that reading met the requirements of the claim. I think there were some other questions that were presented, and I'd just like to flag the question of the mappings that were raised. The first mapping did, in fact, use the database as a source of the access to the files. The second mapping spoke to the collection of individual databases to satisfy the user library. I think that's also supported by the substantial evidence that was in front of the board. And, again, it's very important to appreciate that there's very little that was actually ultimately in dispute between the parties based on the testimony of their witness in deposition in front of the board. I believe with that, I think I will rest. And unless you have any other questions about the record, I'm happy to dive into it. Thank you. Mr. Cush and Mr. Rosenthal. Good morning. May it please the court, I represent Google with respect to the Foley reference and the Kikinis reference as well, but I'm going to focus my comments on the Foley reference. I want to address right off the bat this notion that the board did not apply its own construction. First of all, there was no dispute below that Foley had a user library. When you look at the board's construction and the board's discussion on page A25, the board set forth what the disputes were. The disputes below were whether or not there was a user profile and whether that user profile was separate from the user library. If we look, for instance, on A26, which is the board's decision, the board says, Patent owner contends that Foley does not teach a user profile separate from a user library. We disagree. In its mapping between the disclosure of Foley and the limitations of Claim 2, Petitioner asserts that Foley's portfolio file corresponds to the claimed user profile, and the collection of a user's project files in Foley corresponds to the library. Patent owner does not dispute this mapping, but instead argues that Foley's portfolio file and collection of project files describe the same thing. That was the argument below. Now, Appellant says, well, I don't see anywhere in the analysis where they specifically said that the project files are a collection of the user's stored files. That's because that wasn't in dispute. However, they're wrong in any event, because on the previous page, on A25, this is the board speaking, As Petitioner asserts, a portfolio file in Foley contains references or links to a user's project files, which are created and named by a user, and cites the specification of the Foley patent, and cites expert testimony that we provided in support of that notion. This idea that the board did not decide that the collection of files are the user's files was not made below, and it is not true. The board actually did decide that issue. Now, with respect to the issues that were in the briefs on the points, there are only two alleged distinctions that Appellant makes over the Foley reference. None of them were discussed today, but I want to address both of them to make sure that we address the points that were raised in the reply brief. First, there's this argument that there's no program in the Foley reference, because there's described a JWS program, it's called a Java Workshop Program, and a Java Browser. They say those are separate programs. They're not the same program. The board found, as a matter of fact, that Foley does describe a single program. That factual finding is entitled to deference. There's substantial evidence to support it. What is that substantial evidence? The board relied on a handful of references within Foley that says the JWS program incorporates the JWS browser. It integrates the JWS browser. It utilizes the JWS browser. It uses the JWS browser. And the JWS browser is under control of the JWS program. It couldn't be more clear that these two things are related. The board found two alternative grounds to find this limitation met. First, it found that, in fact, the JWS browser is part of the JWS program, and therefore it's a single program. In doing so, the board found that the JWS browser is a module that is contained within the program. The definition of program is very broad in the 290 patent. It is just a collection or one or more related program modules. The board also found, as an alternative ground, that even if you consider the JWS program and the JWS browser to be separate program modules, that they are related. And again, the board relied on the references that I just referred to, all of that explicit language from the Foley reference, in addition to testimony. And there's testimony from our expert that, in reading some of those passages, what that means is that the JWS browser is contained within the JWS program. So we don't think that there is any ambiguity about the specification of the Foley patent. But to the extent there is any ambiguity and you could read it two different ways, the board read it this way, and there is substantial evidence to support the board's reading. That closes that issue of program. The second and last distinction that the appellant raised with respect to Foley was this notion that there's no user library. And the argument, after saying the board didn't actually say what it said, the argument is that the collection of project files in Foley is not the user's files. Why? Because it can be published to be accessible by anyone. Now, there's absolutely nothing in the claim construction of user library that requires that the files of the user be kept private. It doesn't say a collection of the user's stored files that cannot be accessed by anyone else. And in fact, that claim construction was never objected to. A collection of the user's stored files. Nor is it objected to or argued that it's wrong here in this court. We are stuck with, and they are stuck with, a collection of the user's stored files, or however that was phrased. There's nothing that requires it to be private. In any event, even if there were somehow a requirement that the user's files have to be kept private, there's an explicit disclosure in the Foley reference that says that the creator of the portfolio has the option. This is on A1580 at the top of column 8, line 12 of the Foley reference. Once the new portfolio has been created, its creator can keep it private or can publish it on the internet to be accessed by others. So there's an explicit disclosure within Foley that it can be private, even if that were somehow a requirement of the claim. Now, the appellant has argued, well, if the portfolio files and the project files are on a remote computer, that means that they are published and that they're not private. That's not supported at all by the specification of Foley. The best figure, and I think this figure really resolves every question with respect to Foley, is if you look at figure 6 of Foley, which is on A1576. This figure tells you everything you need to know about Foley. In this figure, what you see is in machine C, which is a remote machine, there's a box, and it says remotely stored portfolio and projects. So that's a user profile. That's the portfolio file. And a user library. That's the projects. Both stored on a remote computer, which meets the definition of server, machine C. In that figure alone, you can see exactly what's claimed in claim 2, and that's exactly what the board found. The board relied on this figure and on figure 5 and actually excerpted them in the opinion. The notion that when these files are stored remotely, they are necessarily published and no longer private is nowhere supported in the specification. In fact, the specification of the Foley patent and the abstract in particular demonstrates that the notion of where the portfolio is stored and whether it's published are two completely different concepts. When we look at the abstract of Foley, which is A1570, there are two notions that are described. First, about a third of the way down the abstract, it says the software portfolio and or their constituent projects can be stored on the system hosting the portfolio management system or on any remote system. So that's the disclosure that it can be local or remote. At the end of the abstract, it then says the PMS also allows users to publish portfolios and projects on the Internet to be used by others within certain limits set by the publisher. So there's two independent concepts. The first concept is where are the files stored? They can be local or remote. As we saw in figure 6, they can all be remote. There's a separate independent concept, which is whether you publish it or keep it private. The claims don't require that you keep these private. Even if they did, Foley explicitly discloses that you can keep it private regardless of where it's stored. If the panel has any questions, I'm happy to answer them. Otherwise, that's all I have. Thank you, Mr. Rosenthal. Mr. Weinberg has a little time, five minutes plus. Thank you, Your Honors. So I'd like to start with where Mr. Rosenthal left off. There were a couple of points that he was making that required clarification. The first, with respect to what the board decided and how it did or did not apply the construction, what Mr. Rosenthal cited on page A25 of the Google decision was nothing more than the board's recitation of the petitioner's contention. The quote is, as petitioner asserts, a portfolio file in Foley contains references or links to a user's project files, which are created and named by the users. The arguments on A26, where the board applies the construction or does not, that does not make reference to an individual's stored files. I'd also like to turn to the idea that the portfolio file and the project files are somehow private when they are remotely stored. What Foley teaches on columns 7, line 65, through column 8, lines 13, is the process by which portfolio files and the projects are created. It says a user of the JWS150A can create a new portfolio by selecting the portfolio manager's quote-unquote create option and then entering the name of the portfolio to be created. In response, the JWS150A calls the portfolio-create method 146A1A, which creates the corresponding portfolio file on the local system, displays its name in the toolbar, and adds the portfolio's name to the choose and remove submenus 147A1C, 147A1D. Then, in the very next paragraph, it says, once the new portfolio has been created, i.e., created on the local system, its creator can keep it private or can publish it on the internet to be accessed by others. And while figure 6 shows machine C as storing a remote portfolio and remote project files, remember, in order to satisfy the limitations of the user profile and user library, both the portfolio file and the project files must be remotely stored. So everything that deals with the portfolio file and project files on the local system, they're out. They don't matter for consideration of obviousness with respect to the 290. But when you look at the process by which portfolios are created, they are created on the local system or they are imported from remote servers. And that remote server merely takes somebody else's projects and brings it into the project that's being created on the user system, the local file. And it's important to compare and contrast what the 290 claims and what Foley claims. The 290 claims a system for storing an individual's stored files. That's the user library. What's described in the 290 patent are e-mails and business presentations and other personal or private documents. What Foley is is a tool to import and store and share computer programs that are created by developers that enable others to build more quickly their own projects. These are object code and source code files that are stored on distant nodes. Indeed, the patent describes on column 2 beginning at line 29, there is a need for an internet-enabled programming environment that allows a user to assemble programs from components that are distributed on diverse internet nodes or to download entire program folders from another internet node. These are two very different systems. And while the mappings that is attempted suggest that there may be a user profile and a user library in certain forms here, the reality is the Foley system is a publishing tool to allow a developer to share his or her projects. Whereas the 290 claims a library that is being stored with an individual's stored files. As the board construed the user library. I see my time is nearly up. One more note. Mr. Cushon mentioned that Dr. Plot, who is BE's expert, acknowledged at his deposition that that one liner from Kikinis discloses the association of a specific file with a specific link. I would merely point out the question he was asked, and it's in our brief, is are those words there in Kikinis? And he agreed with that. But his declaration and his testimony is not that that means there is a one-to-one link between the link on the user profile and the file in the user library. Thank you very much. Thank you, Mr. Weinberg. We appreciate all the excellent arguments in all of these cases. They will be taken under submission. All right. The honorable court is adjourned because of ground rules at today's.